[Crim. No. 4011.   Second Dist., Div. Three.   Mar. 1, 1948.]

THE PEOPLE, Respondent, v. FREDERICK J. BYRNES, Appellant.

Frederick J. Byrnes, in pro. per., for Appellant.

Robert W. Kenny, Fred N. Howser, Attorneys General, and Frank Richards, Deputy Attorney General, for Respondent.

SHINN, Acting P. J.—This is a companion appeal to No. 4010, *ante*, p. 64 [190 P.2d 286], this day decided. Ref-

erence is made to the opinion in that appeal for a statement of the offenses of which defendant stands convicted. He is now in prison under sentences upon judgments of conviction of four charges of felonies. He appeals from those judgments and from an order denying his motion for a new trial. The reasons for the delay of 15 years are referred to in our opinion in case No. 4010.

Numerous assignments of error are presented by defendant and discussed in the briefs. Only one of them requires decision and this is the contention that defendant was not accorded a public trial as guaranteed by article I, section 13, of the Constitution, and section 686 of the Penal Code.

Defendant, on trial to a jury, with one Clay, jointly accused, was acting as his own attorney. The deputies of the district attorney, acting as prosecutors, moved at the commencement of the trial that the case be heard behind closed doors. Defendant Byrnes objected to any order of that nature and demanded that the trial be public. The court overruled the objection and made an order as follows: ". . . all persons, except the defendants, counsel, officers of the Court, jurors and those having business with and in the court will be excluded, and the Court will direct that the Sheriff shall keep the doors of the court room open and unlocked to admit into the court room only those who have business with the court or in the court. All witnesses on both sides will be excluded from the court room except the witness upon the stand, and the defendants." Presumably this order was carried out by the bailiff and the case was tried under the conditions stated in the order.

Appellant has not attempted to prove any actual prejudice resulting from the exclusion of the public. The record shows no reason for the order, other than the one stated by the court.

The first question is whether in the circumstances appellant was given a public trial. Under normal conditions a public trial is one which is open to the general public at all times. This right of attendance may be curtailed under special circumstances without infringement of the constitutional right, but it cannot be denied altogether, nor can it be restricted except in cases of necessity. The most common of these is the necessity of preserving order and preventing interference with the proceedings. Here there was no actual or threatened disturbance of the proceedings in the trial of defendant and there was no necessity for the order of exclusion.

Such being the case the order was a clear deprivation of the right to a public trial. The law was clearly stated in *People* v. *Hartman,* 103 Cal. 242 [37 P. 153, 42 Am.St.Rep. 108], as follows (pp. 243, 245) : "the court made an order excluding from the courtroom, during the trial of the case, all persons except the officers of the court and the defendant. This was a novel procedure, and has no justification in the law of modern terms. We know of no case decided in this country supporting the course of procedure here pursued. It is in direct violation of that provision of the constitution which says that a party accused of crime has a right to a public trial. The fact that the officers of the court were allowed to be present in no way made the trial public. For the purposes contemplated by the provision of the constitution, the presence of the officers of the court, men whom, it is safe to say, were under the influence of the court, made the trial no more public than if they too had been excluded. . . . The trial should be public in the ordinary common-sense acceptation of the term. The doors of the courtroom are expected to be kept open, the public are entitled to be admitted, and the trial is to be public in all respects, as we have before suggested, with due regard to the size of the courtroom, the conveniences of the court, the right to exclude objectionable characters and youth of tender years, and to do other things which may facilitate the proper conduct of the trial."

We are in full accord with these views. They are supported by the decided weight of authority. (*People* v. *Letoile,* 31 Cal.App. 166 [159 P. 1057], where the court, quoting from *People* v. *Hartman,* stated that the public cannot be wholly excluded; *Tilton* v. *State,* 5 Ga.App. 59 [62 S.E. 651], where the order excluded "everyone not connected with the case"; *Wade* v. *State,* 207 Ala. 1 [92 So. 101], (overruling *Clemons* v. *State,* 17 Ala.App. 533 [86 So. 177]), where admittance was denied to all except those who were related to defendant and officers of the court, including attorneys whose duty it may have been to enter during the course of the trial; *Stewart* v. *State,* 18 Ala.App. 622 [93 So. 274], where all were excluded except those whose presence was "necessary"; *People* v. *Yeager,* 113 Mich. 228 [71 N.W. 491], where all spectators were excluded except relatives of defendant, representatives of the press, friends of the defendant, or the prosecuting witness; *State* v. *Beckstead,* 96 Utah 528 [88 P.2d 461], where witnesses were allowed to remain and all spectators were ex-

cluded; *Tanksley* v. *United States,* 145 F.2d 58, 156 A.L.R.
257 (Anno.), where the order excluded all persons except the
parties and their counsel, officers of the law, representatives
of the press, and the brother and father of the defendant;
*State* v.. *Osborne,* 54 Ore. 289 [103 P. 62, 20 Ann.Cas. 627],
where only the defendant, the attorneys engaged in the trial,
officers of the court and witnesses while on the stand were
allowed in the courtroom; *Rhoades* v. *State,* 102 Neb. 750
[169 N.W. 433], where all those present merely as listeners
were excluded while the prosecutrix was testifying; *State* v.
*Jordan,* 57 Utah 612 [196 P. 565], where the order excluded
all persons except those connected with the case, exclusive of
witnesses, but permitted the father of defendant to remain;
*State* v. *Bonza,* 72 Utah 177 [269 P. 480], where the order ex-
cluded all spectators except the sister of the prosecuting wit-
ness; *State* v. *Hensley,* 75 Ohio 255 [79 N.E. 462, 116 Am.St.
Rep. 734, 9 Ann.Cas. 108, 9 L.R.A.N.S. 277], where testimony
of the prosecution, except that of one witness, was taken in
a small room to which the court was adjourned, the public
being excluded; *State* v. *Keeler,* 52 Mont. 205 [156 P. 1080,
Ann.Cas. 1917E 619, L.R.A. 1916E 472], where all those pres-
ent were allowed to remain but no one was to be admitted.)
All the foregoing were prosecutions for sex offenses and the
orders were made upon the ground that the testimony would
be of an indecent nature. Other cases are: *People* v. *Murray,*
89 Mich. 276 [50 N.W. 995, 28 Am.St.Rep. 294, 14 L.R.A.
809], a murder case where spectators were excluded under
an order to the sheriff to admit only respectable people, and
he excluded all who sought admittance, indiscriminately;
*People* v. *Micalizzi,* 223 Mich. 580 [194 N.W. 540], a murder
case where the courtroom doors were locked and persons were
denied admittance during the charge to the jury; *People* v.
*Callazo,* 119 P.R.R. (Puerto Rico), where the public was ex-
cluded during examination of one of the witnesses in a prose-
cution for disturbing the peace; *Davis* v. *United States,* 247 F.
394 [159 C.C.A. 448, L.R.A. 1918C 1164], a conspiracy to
delay the mails, where the order excluded all spectators, dur-
ing one night session near the end of the trial, except relatives
of defendant and members of the bar and press, and the sheriff
was instructed to admit no one but those of the accepted
classes.

While the several orders considered in the foregoing cases
differed as to terms, all of the cases fall into a single category,

in which also the case at bar belongs. This line of authority is clear cut and direct. It leads to no uncertainty or confusion. The same is not true of the cases in which the right to a public trial has been denied or restricted for various reasons.

Some courts have held that the trial court has the discretionary power to limit the number of spectators, even though there is no real or apparent necessity for it. The reason usually assigned is that the testimony is expected to be indecent and that the spectators, generally, are not otherwise interested in the case. Trials have been held public, within the meaning of the constitutional provision, if friends and relatives of the defendant, or persons interested in the case, were allowed to attend, and it has been deemed important that representatives of the press and members of the bar were not excluded. The theory of these cases is that a trial is public if it is not private, and that the accused is deprived of no substantial right if those who would be of assistance to him in the trial are allowed to remain, or enough spectators are present to insure the performance of. their duties by court officials. As we shall point out later, in discussing the cases relied on by the People, the constitutional right has been construed erroneously as a protection against only the detriment which the accused can show as the result of a nonpublic trial. In other words, prejudice is not presumed, and in the absence of proof of actual prejudice the trials have been held of a sufficiently public nature to meet the requirement of the Constitution.

The attorney general concedes that appellant's trial did not meet the requirements of a public trial as stated in the Hartman case. He adopts the reasoning of the minority cases, placing much reliance upon *People* v. *Stanley,* 33 Cal. App. 624 [166 P. 596], a prosecution upon a charge of omitting to provide for an illegitimate child. Two orders were made. The first was at the request of the defendant and directed that all persons not in some way related to the case should retire. Several days later, the defendant requested that the courtroom be cleared "under the former rule." The court stated that while those who came to gratify some sort of prurient curiosity should be excluded, those who had some legitimate interest should be allowed to remain, including personal friends and relatives of the defendant and those of the complaining witness, if any. The defendant objected to the presence of friends of the complaining witness and

demanded that the trial be public. The court was of the opinion that the right had been waived and directed the trial to proceed as already ordered, that is, under the direction that those who had no interest in the case should retire. From the opinion on the appeal it appears that it was not disclosed by the record to what extent, if at all, either order was obeyed or enforced but it was presumed that the orders were obeyed. The court said (p. 629): "When the order of the court is sufficiently broad and flexible as to admit the officers of the court, the witnesses for the respective parties, the members of the bar, and also, as in this case, all others who have a legitimate interest of any sort or kind in the case, including the personal relatives or friends of the defendant and of the complaining witness, and only expressly excluding those 'who have no interest in the case,' it cannot be said that the trial has not been a public trial, or that the order was not one which was clearly within the sound discretion of the trial court to make. (*Reagan* v. *United States*, 202 F. 488 [44 L.R.A. N.S. 583, 120 C.C.A. 627], and cases cited.)" We are obliged to disagree with this statement of the law, but if it were deemed correct, as applied to the order there under review, it would not be authority for sustaining the order here in question, which excluded all spectators. However, as we read the Reagan case, it was not authority for the proposition that the order in question in *People* v. *Stanley* did not deprive the trial of a public character. The Reagan case, decided by the Ninth Circuit, was considered by that court in *Tanksley* v. *United States, supra,* 145 F.2d 58, 146 A.L.R. 257 (Anno.), where it was said (p. 260): "In the Reagan case this court did not hold that the exclusion of the public was not a violation of the defendant's right to a public trial. What was held was that, on the facts existing in that case, no possible prejudice could have been suffered by the defendant from the exclusion of the public." This analysis of the decision was correct, for it was said in the Reagan case (p. 585): "We think the better doctrine is that it is not reversible error to exclude the spectators as was done by the order of the court in the case at bar, *when there is no showing whatever that the defendant was prejudiced thereby, or deprived of the presence, aid, or counsel of any person whose presence might have been of advantage to him* . . . . [Emphasis added.] The mere denial of the literal right should not be held ground

for reversing a judgment, unless it can be perceived that the defendant has been deprived of some benefit or advantage thereby. . . . In a sense it was still a public trial. In addition to the court and jury, there were present in the courtroom the officers of the court, the witnesses for the government and for the defendant, and the counsel for the respective parties, and no members of the bar were excluded. These constituted a sufficient number of the public to see that the plaintiff in error was fairly dealt with, and not unjustly condemned.'' We are not in agreement with the quoted statements or the holding in the case, and shall refer to it later.

There is not much to be said with reference to the claimed discretion of the court to exclude the public solely upon the ground of the salacious nature of the testimony. The transcript shows that the learned and altruistic judge was of the opinion that the trial had attracted persons whose only motive in attending was to satisfy their morbid tastes by listening to narratives of indecencies and obscenities. Although well known from his decisions as a staunch defender of constitutional rights he felt that such individuals had no place in a temple of justice, and in the interest of decency and public morals should be excluded. Many other judges have been actuated by the same high motive. The purpose, however, was one which could not be accomplished legally. The public includes persons of all classes. If there were any process by which any group or groups could be screened out for exclusion solely on the basis of their ulterior motives in attending the trial, this purpose could not have been accomplished without depriving the trial of a public character. The exclusion of the general public upon this ground alone was a violation of the defendant's constitutional right. What we have said is not intended to apply to a situation in which it would appear to the court that a material witness, because of emotional disturbance, would be substantially prevented from giving testimony in the presence of a crowd of spectators.

In considering further the matter of the presumption of prejudice we shall extend some of the views previously expressed. In the decisions which follow the minority rule a good deal of confusion will be noticed. The question whether the trial was public and the question whether actual prejudice was shown have occasionally been considered together as if the latter were controlling as to the former, and some courts

have reached the conclusion that if the presence of a few spectators is permitted this gives the trial a public character, if no actual prejudice be shown. This, as we have pointed out, is merely to hold that the accused is not entitled to a public trial in the true sense.

On this point the attorney general relies on the Reagan case, *supra*, as the court did in *People* v. *Stanley, supra*. It was said there that the only conceivable benefit the defendant might have been deprived of was the advantage that he might have gained by reason of the embarrassment the prosecutrix might suffer because of the presence of spectators, and the court said that he had no right to complain of the loss of this benefit. This statement, which is the gist of the decision, was expressly disapproved in the Tanksley case, where the court quoted with approval from *Davis* v. *United States, supra,* 8 Cir. 247 F. 394, 398 [159 C.C.A. 448, L.R.A. 1918C 1164], that "a violation of the constitutional right necessarily implies prejudice and more than that need not appear. Furthermore, it would be difficult, if not impossible, in such cases for a defendant to point to any definite, personal injury. To require him to do so would impair or destroy the safeguard." The Reagan case does not state the prevailing rule of the federal courts as to the right to a public trial under the guaranty of the Constitution of the United States. The statement found occasionally in decisions of state courts that the accused has no reason to complain of a nonpublic trial unless he can show how he was disadvantaged, has been disapproved generally for the reasons stated in the Tanksley and Davis cases.

We have not found any case in which the court has pointed out how a defendant would go about proving actual prejudice. The attorney general has furnished no answer to the many statements in the cases as to the practical impossibility of it and we can furnish none. Neither have we found a case in which a judgment has been reversed on a showing of actual prejudice, as distinguished from presumed prejudice, for deprivation of the right to a public trial.

The attorney general also relies on section 4½ of article VI of the Constitution which provides that a judgment shall not be set aside or a new trial granted unless, after an examination of the entire case, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice. The

argument is that even if prior to the adoption of section 4½ a presumption of prejudice arose from deprivation of the right to a public trial, this rule was abolished by the adoption of section 4½, under which prejudice is no longer presumed from errors of procedure.

We think section 4½ may not be given effect as an abridgment of the right to a public trial. At the time the section was adopted the right to a public trial was well established as inviolate. Our courts and the courts generally refused to inquire into the matter of actual prejudice.

The right to a public trial, in this respect, is comparable to the rights of trial by jury and to the assistance of counsel. They stand on the same footing. All questions as to whether these rights are essential for the protection of the substantial rights of the accused were settled affirmatively by the adoption of section 13 of article I. There can be no inquiry into the matter, so far as the right to a public trial is concerned, other than in the exceptional cases of necessity heretofore mentioned.

A judgment of conviction, where the defendant has demanded and been refused a public trial, cannot be allowed to stand, even against the meanest criminal in the land, however guilty he may be of the offenses charged.

The judgments and order denying motion for new trial are reversed and a new trial is ordered as to the charges in the several counts of the indictment under which judgments of conviction were heretofore rendered.

Vallée, J. pro tem., concurred.

Wood, J., dissented.

Appellant's and respondent's petitions for a hearing by the Supreme Court were denied March 30, 1948. Edmonds, J., and Spence, J., voted for a hearing.