[Crim. No. 4010.   Second Dist., Div. Three.   Mar. 1, 1948.]

THE PEOPLE, Respondent, v. FREDERICK J. BYRNES, Appellant.

Frederick J. Byrnes, in pro. per., for Appellant.

Robert W. Kenny, Fred N. Howser, Attorneys General, and Frank Richards, Deputy Attorney General, for Respondent.

SHINN, Acting P. J.—In 1932, Frederick J. Byrnes was accused by indictment of six felony offenses against a young woman. Two prior convictions of felonies were charged, namely, forgery and grand theft, which defendant admitted.

In a jury trial he was convicted of kidnapping, forcible rape, violation of section 288a of the Penal Code, and simple assault. He was acquitted of a separate charge of rape, of violation of section 286 Penal Code, and of assault with intent to kill and murder his victim. By separate indictment defendant was accused of aiding and abetting one Jack Clay in the commission of two acts of forcible rape, of violation of section 286 Penal Code, and of two violations of section 288a by the said Jack Clay. The same prior convictions were charged and admitted. Clay also was indicted. The victim was the same as in the first indictment. The defendants were tried jointly. Clay was acquitted and Byrnes was convicted of two offenses of forcible rape and two violations of section 288a Penal Code. The eight offenses of which he was convicted were committed during the course of a single night.

After judgment was pronounced in each case, defendant made a motion for new trial, which was denied. He gave notices of appeal but no records on appeal were prepared. He entered State Prison in 1932, where he still remains. In 1945, he was before the Supreme Court on habeas corpus, seeking his release. The writ was discharged, defendant was remanded, but the superior court was directed to hear any motion or motions he might make to be relieved from default in perfecting his appeal in either or both of said actions *(In re Byrnes,* 26 Cal.2d 824 [161 P.2d 376].) The main circumstances which led to the long delay in the proceedings on appeal are stated in the opinion. Upon applications of defendant the superior court ordered the preparation of clerk's and reporter's transcripts on appeal in each case, and the same have been filed. The two appeals are before us on a single set of briefs.

The several sentences under the first indictment were ordered to run consecutively, and those under the second indictment were ordered to run consecutively, and consecutively with the sentences under the first indictment. Defendant had served out the terms fixed as punishment under the judgments in the first prosecution before the decision of the Supreme Court in the habeas corpus proceeding, and is now serving the sentences imposed under the judgments in the second case.

We are considering now only the appeal from the judgments in the first case.

In the habeas corpus matter the Supreme Court took note of the fact that the first judgments had been fully satisfied, but extended to defendant an opportunity to perfect his appeals, saying (p. 828) : ''For although Byrnes served the full terms of imprisonment imposed under the judgments of conviction in the first action, that fact does not bar his right to .an appeal from such judgments for the purpose of clearing his name (See *People* v. *Chamness*, 109 Cal.App. Supp. 778 [288 P. 20] ; *In re Lincoln*, 102 Cal.App. 733 [283 P. 965].... In the event that the trial court relieves him from default in the presentation of the record.''

█ Appellant's principal contention is that the evidence was insufficient to justify the verdicts and we shall proceed to a consideration of that question. A condensed statement of the substance of the evidence will provide the answer. In our statement we shall omit all but a few of the details of appellant's conduct with which the record abounds. It will be sufficient to state the facts testified to by the witnesses, without embellishment. There will be found in what we have to say no satisfaction or solace for appellant. In its mildest form it will be a nauseating recital of depravity, brutality and hideous torture on the part of Byrnes, compared with which the mere slaying of his victim might well have been an act of mercy.

There was proof of the following facts : The prosecutrix, a young unmarried white woman, who lived with her mother and sister, went late one evening with an escort, Mr. Sullivan, to a Negro resort on Central Avenue, in Los Angeles. Many of those present were colored; the defendant has a white skin. Drinks were consumed by prosecutrix and her escort; the latter, becoming ill, retired and was grabbed by several Negroes, beaten, robbed and rousted out of the place with violence. He was later arrested for a traffic violation and did not reappear. Defendant, who was in the uniform of an officer of the Air Forces, though not a member thereof, offered to help prosecutrix find her escort. He took her to another night club, near by, where he checked her coat. When she sought to leave he twisted her arm and threatened her; when she had recovered her coat she ran out, across the street and entered a cab; defendant followed, dragged her from the cab, and threatened to shoot the cab driver; prosecutrix, shortly thereafter, ran to the cab again, asked to be taken home and defendant grabbed her, forced her away and into

his car. She jumped out of the car and onto the running board of a car of a man named Mitchell. Byrnes again grabbed her, forced her into his car and drove to the stockyards area where he committed an act of rape and other offenses. Defendant stated that he had a gun, threatened to kill the prosecutrix, tore her clothes from her, threw her to the floor of the car, beat her with his fists and broke her nose in two places. He drove back to the front of the last-mentioned night club; prosecutrix was on the floor of the car, without clothing. A Negro, Jack Clay, a stranger, came to the car with a bottle of liquor, defendant ordered him into the car and drove to a grainfield near an airport. Here Clay, threatened with death and believing Byrnes had a gun, committed an act of rape, a violation of section 288a, and prosecutrix, under like threats, committed the latter act upon the person of Clay and the person of Byrnes. Byrnes kicked prosecutrix, struck her in the face, slammed her head against the car, seized her by the hair and threw her about, pulling out quantities of her hair and causing her nose to again bleed profusely. As they left the field the car stalled in a ditch. Ignacio Tabar, a farmer who lived near by, helped them extricate it. He testified to seeing Byrnes in an act of intercourse with prosecutrix; that the latter was naked, badly beaten up and bleeding and that Byrnes compelled her to walk around in this condition. Upon returning to the neighborhood from which they had started Byrnes caused Clay to leave the car, drove to a house in the vicinity, placed his overcoat around prosecutrix, carried her up to a room, brought in three Negroes and caused them to commit sexual crimes upon prosecutrix. He then drove her to an abandoned shack toward the beach, committed an act of rape and other sexual offenses and caused prosecutrix to commit an act of violation of section 288a. During this time he threw her against a wall, struck her in the face and threatened to kill her. He then drove her to her home; she had an intense desire to cause his arrest and persuaded him to take her to her apartment, clothed in his overcoat. As they entered the apartment, prosecutrix hysterically told her mother and sister something of what had happened to her, called to them to hold Byrnes, which they attempted to do. Byrnes struck the mother, knocking her down and breaking a rib, also struck the sister, and fled. Prosecutrix was hospitalized for six days on account of her injuries. Other evidence will be

mentioned later. After his arrest Byrnes admitted to the police that he assaulted prosecutrix near the airport, forced her to have intercourse with Clay and to commit a violation of section 288a with Clay. At the trial he testified that he used no violence, that he engaged in an act of intercourse with prosecutrix near the airport and that it was with her consent and upon her insistence. He also testified to witnessing acts of misconduct between prosecutrix and Clay.

Briefs have been filed on behalf of appellant by an attorney substituted for one appointed by the Supreme Court. They contain a conscientious, labored effort to discredit the testimony of the prosecutrix to the end that the judgments in each case be reversed for insufficiency of evidence. After discharging his attorney, who had shown extreme diligence and effort in his behalf, appellant filed a supplemental brief in propria persona. In this brief he makes use of scurrilous and abusive language in his attack upon the credibility of the prosecutrix. It is sufficient to say that we are not impressed in the slightest by any of the arguments questioning the credibility of the prosecutrix or the sufficiency of the evidence. The testimony of prosecutrix before the grand jury and at the trial as to her mistreatment at the hands of defendant was fully as coherent and consistent as could have been expected of any woman who had been through a night of the cruel and terrifying abuse which she related. If there was any inherently improbable and worthless testimony in the case it consisted of the feeble and obviously false testimony of Byrnes that he committed no act of violence, and that the acts which he admitted were committed with the consent and upon the insistence of prosecutrix. There was no lack of evidence corroborating the testimony of the prosecutrix. The taxicab driver testified to the attempts made by prosecutrix to escape in his cab when she was dragged out of it by Byrnes under threats that he would shoot the driver if he interfered. Mitchell testified to her attempt to escape in his car which was forcibly prevented by Byrnes. A physician testified that prosecutrix was bruised, cut and scratched, and that her nose was broken in two places. The police found blood, a handful of hair, and part of an undergarment, in the car that Byrnes had used, and there was other corroborative evidence, including that of the mother and sister, which need not be related.

The evidence was not only legally sufficient to establish guilt, but the proof in support of the charges was so strong

that verdicts other than those rendered would not have been within the bounds of reason.

■ Another contention is that the prosecutor was guilty of prejudicial misconduct. He is accused of maintaining a contemptuous attitude toward the attorney for the defense throughout the trial, which was manifested by many sarcastic and even insulting remarks. The attorney general very properly concedes that this conduct was obnoxious and not to be condoned, but he maintains that it furnishes no sufficient ground for a reversal of the judgments. With this position we agree. The ill temper of the prosecutor was not displayed toward the defendant, there was no attempt to influence the jury by the statement of any matter outside the record, and the remarks complained of were not such as have heretofore been deemed prejudicial to a defendant on trial. It is unnecessary to consider them specifically. We do not believe it at all probable that the improper statements could have influenced the verdict in the slightest. We might repeat an observation which we made recently that the improper statements of the prosecutor could have had no appreciable effect on the minds of the jurors as compared with the impact of the evidence of the defendant's guilt.

■ There was no prejudicial error in the matter of instructions. While the court instructed that the testimony of the prosecutrix should be carefully scanned, a more comprehensive instruction which it is well established should be given in such cases was not given. In view of the evidence it is highly improbable that different verdicts would have been returned if a more complete instruction had been given. (*People* v. *Lucas,* 16 Cal.2d 178 [105 P.2d 102, 130 A.L.R. 1485] ; *People* v. *Mummert,* 57 Cal.App.2d 849 [135 P.2d 665] ; *People* v. *Stangler,* 18 Cal.2d 688, 693 [117 P.2d 321].)

■ There was no error in failing to give an instruction on expert testimony. The only testimony of any consequence given by the physician consisted of descriptions of the physical condition of prosecutrix.

■ Count two of the indictment charged rape by means of force and violence and count three, rape by means of threats, etc. The jury were instructed that defendant could be convicted of only one charge of rape. He was convicted on count two and acquitted on count three. It is contended that inasmuch as prosecutrix testified to more than one act

of rape the People should have made an election as to which act was relied on. No demand for an election was made by defendant and it was to be presumed that the prosecution relied upon the charge as to which it first submitted evidence. (*People* v. *Chiappelone,* 90 Cal.App. 472 [265 P. 976]; *People* v. *Bodey,* 94 Cal.App. 420 [271 P. 203]; *People* v. *Meraviglia,* 73 Cal.App. 402 [238 P. 794].)

It is unnecessary in our decision to indicate what our judgment might have been if we had found that the evidence was insufficient to justify the verdicts, that is to say, whether it would have been proper to direct a new trial or to order a dismissal of the action. We have considered also the charge of misconduct of the prosecutor and the several claims of error as we would in a case where the judgment had not been fully satisfied by the completion of a sentence of imprisonment. It should not be inferred from our consideration of these points that if we had found the charge of prejudicial misconduct or any claim of prejudicial error sustained, we would have directed a reversal of the judgments and ordered a new trial. A reversal for mere error or irregularity in the proceedings would not tend in any way to clear the name of the defendant, but would necessarily place it in his power to plead former jeopardy, and thus force a dismissal of the charge. The attorney general has not made objection to the consideration of these questions on the ground that they are moot, and we deem it unnecessary to decide the point.

The judgments and the order denying motion for new trial are affirmed.

Wood, J., and Vallée, J. pro tem., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 30, 1948.