[Crim. No. 4932. In Bank. Oct. 28, 1948.]

In re FREDERICK JOHN BYRNES, on Habeas Corpus.

844

Frederick John Byrnes, in pro. per., for Petitioner.

Fred N. Howser, Attorney General, and Clarence A. Linn, Deputy Attorney General, for Respondent.

SPENCE, J. — Petitioner, who is confined in the State Prison at San Quentin, seeks his release on the ground that he has completed his term of lawful imprisonment. While the record does not sustain his position in that regard, nevertheless it does appear appropriate that the Adult Authority should reconsider the propriety of his continued confinement in the light of subsequent events as will hereinafter be delineated.

Following two trials in 1932—one in July and the other a month later—petitioner was convicted on seven counts, divisible three on the first trial and four on the second. The indictment in each case charged two prior convictions of felonies—forgery and grand theft—and these were admitted. By its judgments, the court ordered that the sentences on the seven offenses—consisting of alleged acts of kidnapping, rape, and violations of section 288a of the Penal Code as separately stated—run consecutively. At the time of the alleged commission of these seven offenses, petitioner was on probation on account of the two prior felony convictions and he had never served a penitentiary term on those charges. Such probation was thereupon revoked, and judgment was pronounced with the sentence to run concurrently with the sentences upon the other seven offenses. Petitioner started his term of imprisonment on September 15, 1932. On October 18, 1935, the Board of Prison Terms and Paroles fixed the length of time of petitioner's imprisonment at 35 years, apparently computed on the formula basis of five years for each of the seven enumerated offenses to run consecutively, and five years on the prior felony conviction to run concurrently. On April 4, 1944, petitioner's total sentence was refixed by the board at 30 years, and with the available credit allowances, this term has been reduced to 19 years and three months, permitting petitioner's release in 1951 unless further action is taken by the Adult Authority, successor to the aforesaid board. (Pen. Code, § 3000; as amended by Stats., 3d Ex.Sess. 1944, ch. 2, § 40.)

Meanwhile petitioner had encountered considerable delay in prosecuting his respective appeal proceedings, and he applied to this court for a determination of his rights in seeking a review of the judgments of conviction entered against him in the two 1932 trials. As the circumstances were so outlined, this court by decision of August 14, 1945, in *In re Byrnes,* 26 Cal.2d 824 [161 P.2d 376], directed the trial court "to hear any motion or motions" that petitioner might make "for the purpose of securing relief from default in the presentation of the record upon appeal in either or both of the actions referred to." (P. 828.) Thereafter petitioner perfected his respective appeals, and on March 1, 1948, the District Court of Appeal rendered its decisions, whereby "the judgments" of conviction in the first action were "affirmed" (*People* v. *Byrnes,* 84 Cal.App.2d 64, 71 [190 P.2d 286] ; hearing denied by this court on March 30, 1948, 31 A.C. No. 17, Minutes, p. 2) and "the judgments" of conviction in the second action were "reversed" and "a new trial" was "ordered as to the charges in the several counts of the indictment under which [said] judgments . . . were [t]heretofore rendered." (*People* v. *Byrnes,* 84 Cal.App.2d 72, 80 [190 P.2d 290] ; hearing denied by this court on March 30, 1948, 31 A.C. No. 17, Minutes, p. 2.) The retrial of the second action resulted in petitioner's acquittal on July 16, 1948.

Petitioner challenges the legality of his continued imprisonment under the above circumstances. He contends that he has served the sentences fixed on the judgments of conviction as affirmed on appeal in the first action—computing the length of time to be five years on each of the three counts, or an aggregate of 15 years, with the period of commitment beginning on September 15, 1932, and completed, on the basis of alleged good-time credit allowances, as of March 15, 1942— and that he is now entitled to his release because no other judgments stand against him following the reversal ordered on the appeal on the four counts comprising the second action and his subsequent acquittal on the retrial of those charges. In support of his position, petitioner refers to these statements made in the opinions rendered with regard to his appeal proceedings: (1) *In re Byrnes, supra,* 26 Cal.2d 824, where in the light of petitioner's consecutive sentences, this court noted at page 827: ". . . it is conceded that, as the petitioner has served his full term for the offenses of which he was convicted in the first trial, he cannot obtain relief as

to them so far as imprisonment is concerned . . ." and (2) *People* v. *Byrnes, supra,* 84 Cal.App.2d 64, where in reviewing "the judgments in the first case," the District Court of Appeal similarly observed, at page 66, that petitioner "had served out the terms fixed as punishment under the judgments in the first prosecution before the decision of the Supreme Court in the habeas corpus proceeding [1945], and is now serving the sentences imposed under the judgments in the second case . . . In the habeas corpus matter the Supreme Court took note of the fact that the first judgments had been fully satisfied . . . saying (p. 828): 'For although Byrnes served the full terms of imprisonment imposed under the judgments of conviction in the first action, that fact does not bar his right to an appeal' . . ." therefrom.

In opposing petitioner's claim to release, respondent maintains that petitioner is serving one continuous sentence as a total period of confinement fixed by the prison authorities rather than a series of separate, consecutive servitudes imposed upon him in pursuance of the original judgments of conviction—five years on each of seven counts. Respondent also notes that the "cumulative sentence," originally fixed by the Board of Prison Terms and Paroles at 35 years, was reduced thereafter to 30 years; that in so refixing the length of time of petitioner's imprisonment, the board treated it as a "single term of confinement" and without reference to the specific counts evidenced by the seven commitments, all of which then stood unimpeached against petitioner; that the judgments on the three offenses that were affirmed in the first action (*People* v. *Byrnes, supra,* 84 Cal.App.2d 64) will sustain a "cumulative sentence" of 90 years—25 years as the maximum penalty provided by law for kidnapping (Pen. Code, § 208), 50 years for rape (Pen. Code, § 264), and 15 years for sex perversion (Pen. Code, § 288a)—independent of the reversed judgments on the four counts subject of the second action against petitioner (*People* v. *Byrnes, supra,* 84 Cal.App.2d 72); and that with credit allowances the reduced "cumulative sentence" will expire in approximately three years, but that petitioner will be eligible for parole as early as November, 1948, when his entire term of imprisonment will be subject to full reconsideration and redetermination by the Adult Authority in view of his "acquittal" on the retrial of the offenses charged in the second action.

Respondent's position accords with the recent decision of this court in *In re Cowen,* 27 Cal.2d 637 [166 P.2d 279],

wherein it was declared at pages 645-646 that ". . . a prisoner serving consecutive sentences must be regarded as undergoing a single, continuous term of confinement thereunder for the purpose of redetermination by the Adult Authority of the length of time of his imprisonment. As in the case of the forfeiture of good time, any other result would nullify at least in part the results sought to be accomplished by the statute. Section 3021 of the Penal Code provides that 'When a prisoner has imposed upon him two or more cumulative or consecutive sentences, the board may determine and redetermine after the expiration of six months of his first sentence, what length of time he shall serve on *all* such cumulative or consecutive sentences' (italics added) without any suggestion that by the passage of time (short of the ultimate end of the entire term) the authority of the board (now the Adult Authority) to redetermine the length of time under some of such cumulative sentences is lost. The word cumulative means 'composed of accumulated parts; formed, or becoming larger, by . . . successive additions' (Webster's New Int. Dict., 2d ed.) and the use of such word by the Legislature in section 3021, apparently as a synonym for consecutive, suggests that the several sentences are to be regarded as a unit in administering the law." And it was further said at page 647: "The objection that the 'coalescing into one' of 'sentences which have no legal relation to each other,' is 'impossible,' is not persuasive. In the case of a prisoner who is serving concurrent sentences for crimes committed on separate occasions, perhaps in separate counties, the sentences are similarly, and unobjectionably, 'coalesced into one.' And consecutive sentences, even if regarded as separate and distinct for some purposes, necessarily coalesce into one aggregate term of confinement during which the prisoner is continuingly restrained of his liberty."

While in the Cowen case the precise issue was the power of the Adult Authority to revoke credits theretofore earned by a prisoner confined under consecutive sentences and refix his total term of imprisonment after the first of such sentences had expired by reason of such credits, such right of reconsideration and redetermination was deemed to exist under our penal statutes not only in furtherance of the effective operation of the credit system but likewise for the successful administration of the whole theory of the law relating to consecutive sentences as premised on the concept of "a single,

continuous term of confinement rather than a series of distinct, independent terms'' (p. 643)—as appears from the above quoted language. It therefore becomes immaterial here that petitioner had completed, according to the formula followed by the Board of Prison Terms and Paroles, the ''full terms of imprisonment imposed under the [three] judgments of conviction [affirmed on appeal] in the first action'' (*People* v. *Byrnes, supra,* 84 Cal.App.2d 64, 67) or that respondent in the prior habeas corpus proceeding had assumed the position that any and all questions which could be presented on appeal from the judgments of conviction in the first action had become ''moot'' since petitioner had ''served his full term'' therefor (*In re Byrnes, supra,* 26 Cal.2d 824, 827). The aforesaid board nevertheless had the power in 1944 to reconsider petitioner's ''continuous term of confinement'' in relation to his adjudicated guilt as it then stood unimpeached as to both actions. (*In re Albori,* 218 Cal. 34, 36-37 [21 P.2d 423].) The subsequent reversal of the judgments of conviction on the four counts subject of the second action against petitioner (*People* v. *Byrnes, supra,* 84 Cal.App.2d 72), and then his ''acquittal'' thereon, did not render said board's reconsideration of his total term of imprisonment, followed by the imposition of a 30-year ''cumulative sentence,'' void as an act beyond its jurisdiction nor require petitioner's release from custody when the maximum penalty prescribed by law for the valid convictions against petitioner in the first action was greater than the ''term of imprisonment'' as so redetermined. (*In re Mann,* 192 Cal. 165, 166 [219 P. 71].)

Petitioner's position is not strengthened by his reliance on the case of *In re Shull,* 23 Cal.2d 745 [146 P.2d 417], involving an entirely different factual situation and distinct principles of law. There the Board of Prison Terms and Paroles had imposed upon the petitioner a term of 10 years on a conviction for the commission of an assault with a deadly weapon (the maximum—Pen. Code, § 245) and an ''additional five-year term'' because of his possession of a pistol contrary to the provisions of the Deadly Weapons Act (Stats. 1923, p. 696, § 2; Deering's Gen. Laws, 1937, Act 1970) applicable to a person ''previously convicted of a felony.'' The latter term was deemed improper because it constituted an ''added penalty'' for a factor—the ''deadly weapon''— which as an integral part of the basic offense had already served to fix the full extent of the punishment therefor. With

these considerations affecting the propriety of the petitioner's continued confinement, it was said at pages 752-753: "The record discloses that petitioner was entitled to certain credits for good behavior which were allowed him by the Board of Prison Directors. The allowance of these credits had the effect of reducing his term so that he was entitled to his release except for the additional five-year term imposed under section 3 of the Deadly Weapons Act. After the expiration of his term as so reduced, petitioner violated a regulation of the prison and all of his credits were declared forfeited. In declaring such forfeiture the board exceeded its authority. By reason of the allowance of credits, under the correct interpretation of the law, petitioner's term as reduced had expired and he was entitled to his discharge before the act upon which the forfeiture was based occurred. Section 2940 of the Penal Code provides that a prisoner should be discharged upon completion of his term as fixed by the board. Section 2942 states that the discharge date mentioned in section 2940 'shall be shortened to the extent of any time credits allowed and not forfeited.' . . . [Accordingly] the petitioner is ordered discharged from custody."

Thus it appears in the Shull case that the voiding of the "additional term" entitled the petitioner to his immediate release from custody because he had then already served the maximum term, as reduced by credits, for the offense for which punishment had been validly imposed, and the "Board of Prison Directors," by a subsequent declaration of the forfeiture of such credits, could not breathe life into a *total* term of imprisonment which had come to an end. So the distinction is made in *In re Cowen, supra,* 27 Cal.2d 637, where "the holding" of the Shull case is quoted as follows (p. 643): " 'once a prisoner has been allowed credits and by reason thereof his reduced term has expired, his term, as not reduced, may not thereafter be revived by a forfeiture of credits for conduct occurring after the expiration of his reduced term.' " But in the present case the board's redetermination of petitioner's "cumulative sentence" at 30 years still left his *total* term of confinement well within the maximum limits of punishment which the law prescribed as the aggregate penalty (90 years) on the convictions on the three counts subject of the first action, and which were affirmed on appeal. (*People* v. *Byrnes, supra,* 84 Cal.App.2d 64.) While our penal statutes (Pen. Code, §§ 1168, 3020, 3021) permitting redetermina-

tion of the length of time of imprisonment do not make possible the imposition of a longer term than could have been imposed when the offenses were first committed, such principle was not violated here. Petitioner had no vested right to have his "term of confinement" for the three affirmed convictions fixed at 15 years (computed on the formula basis of five years on each count) or any other period less than the maximum penalty provided by statute, and the subsequent voiding of his convictions on the four counts subject of the second action (*People* v. *Byrnes, supra,* 84 Cal.App.2d 72) did not invalidate his previously redetermined sentence. However, in view of petitioner's later "acquittal" on the retrial of the four offenses subject of indictment in the second action, it is appropriate that the Adult Authority now reconsider his "term of confinement" solely in relation to the valid portion of his convictions. (*In re Kingsbury,* 74 Cal.App.2d 959, 963 [170 P.2d 82].)

The writ is discharged and the petitioner remanded.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.