[Crim. No. 17801. In Bank. July 21, 1975.]

In re FRANK HAYGOOD on Habeas Corpus.

## Counsel

Frank Haygood, in pro. per., Ezra Hendon, under appointment by the Supreme Court, Stephen B. Bedrick and Treuhaft, Walker & Nawi for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Eddie T. Keller and Gregory W. Baugher, Deputy Attorneys General, for Respondent.

## Opinion

**WRIGHT, C. J.**—We issued an order to show cause in response to a petition for writ of habeas corpus prepared in propria persona by Frank Haygood, an inmate of the California State Prison at Folsom, alleging

that the Department of Corrections and the Adult Authority had acted unlawfully in refixing certain of the terms to which he has been sentenced and in revoking credit for time served on another. Counsel was appointed for petitioner. His review of conviction and sentencing data relative to petitioner's confinement led him to conclude that additional issues should be raised on petitioner's behalf. By leave of the court a supplemental petition was filed and respondent Department of Corrections has replied to both the original and supplemental petitions, which we shall hereinafter refer to in the singular as the petition. We have concluded, based on the undisputed facts set out in the petition and the return thereto, that petitioner's terms as fixed by the Adult Authority (Authority) had been fully served prior to the date upon which the Authority last purported to extend them, and that notwithstanding any erroneous legal conclusions that may have influenced the Authority when it fixed those terms, petitioner is entitled to be discharged.

In 1946 petitioner was convicted of escape in violation of Penal Code section 4532.[1] He was sentenced to the term prescribed by law which was then a term of imprisonment not exceeding 10 years. It is undisputed that petitioner was discharged from this "original" term on June 29, 1953.[2]

On March 24, 1949, petitioner was convicted of five counts of forgery in violation of section 470. He was sentenced to concurrent terms of 1 to 14 years' imprisonment. These "A" terms[3] were concurrent with the "O" (original) term and commenced on April 1, 1949, when petitioner was delivered to the custody of the Department of Corrections.[4]

---

[1]Unless otherwise stated, all statutory references are to sections of the Penal Code.

[2]For reference purposes, the Department of Corrections designates the term or terms under which a prisoner is first received as his original or "O" term. Terms imposed on subsequent convictions suffered prior to the prisoner's discharge from the original term are designated "A," "B," "C," etc. terms in the order in which they are imposed. Hereinafter we shall adopt the same terminology and refer to the terms by their alphabetical designations which signify:
"A" term—1949 judgment on five counts of forgery,
"B" term — 1956 judgment for possession of a concealable weapon,
"C" term — January 1959 judgment for robbery, and
"D" term — April 1959 judgment for escape.

[3]See footnote 2, *supra.*

[4]At that time section 2900 provided that a term commenced only upon actual delivery of the defendant to the custody of the Department of Corrections. Subsequently enacted statutory provisions and judicial decisions (§ 2900.5; *In re Kapperman,* 11 Cal.3d 542 [114 Cal.Rptr. 97, 522 P.2d 657]) authorizing credit for precommitment jail time are not in issue here.

On April 23, 1956, petitioner was convicted of carrying a concealed weapon in violation of section 12021. The offense was committed while petitioner was serving his "A" terms on parole. He was sentenced to a term not exceeding five years. This "B" term, which was concurrent with the "A" terms, commenced April 25, 1956. Although its records reflect no discharge from the "A" and "B" terms, but instead indicate service of more than 23 years on the 14-year maximum "A" terms and 18 years on the 5-year maximum "B" term, before this court respondent concedes that the maximum duration of the "A" and "B" terms was approximately April 1963 and May 1961, respectively. The Department of Corrections and the Adult Authority should, therefore, correct their records accordingly to reflect petitioner's discharge from the "A" and "B" terms.

On or about December 21, 1958, however, while he was still serving the "A" and "B" terms, petitioner escaped from a prison camp and shortly thereafter participated in a robbery. He was prosecuted first for the robbery and on January 5, 1959, was convicted and sentenced to a term of not less than one year for violation of section 211. This "C" term, which was concurrent with the then uncompleted "A" and "B" terms, commenced January 8, 1959.

Petitioner then pleaded guilty to escape in violation of section 4531, which has since been repealed.[5] Two prior convictions charged in the information—the 1949 forgery and the 1956 concealed weapon convictions—were stricken prior to the plea. He was sentenced on April 14, 1959.

In sentencing petitioner for the escape the court orally recited that "he be committed to the state prison for the term prescribed by law, the sentence to run at the time he would otherwise have been discharged." The abstract of judgment, which erroneously included the stricken prior convictions, properly reflected the oral pronouncement of judgment.

[5]In 1959, section 4531 provided: "Every prisoner committed to a State prison who escapes or attempts to escape while being conveyed to or from such prison or any other State prison, or any prison road camp, prison forestry camp, or other prison camp or prison farm or any other place while under the custody of prison officials, officers or employees; or who escapes or attempts to escape from any prison road camp, prison forestry camp, or other prison camp or prison farm or other place while under the custody of prison officials, officers, or employees; or who escapes or attempts to escape while at work outside or away from prison under custody of prison officials, officers, or employees is punishable by imprisonment in a State prison for a term of not less than one year and on conviction thereof the term of imprisonment therefor shall commence from the time such prisoner would otherwise have been discharged from said prison." (Stats. 1941, ch. 106, § 15, p. 1124, as amended Stats. 1943, ch. 635, § 2, p. 2255.)

After printed language which read, "It is ordered that the sentences shall be served in respect to one another as follows," a section intended to apply only to sentences on multiple counts in the same judgment, the following typewritten entry appears: "Sentence to commence at the time said defendant would otherwise have been discharged." Following the printed entry "and in respect to any prior incompleted sentence(s) as follows" a typewritten entry states, "Same as above." The instructions on the printed form direct the court to enter there its ruling on whether the new term is to be "concurrent or consecutive to all incomplete sentences from other jurisdictions." Notwithstanding the sentencing judge's use of the statutory language of section 4531 that the term commence when petitioner "would otherwise have been discharged" from the terms he was serving at the time of the escape, i.e., the "A" and "B" terms, the Department of Corrections and the Adult Authority treated the escape term as consecutive not only to the "A" and "B" terms that petitioner was serving at the time of his escape, but also to the "C" term for the robbery he committed *after* the escape.

On October 8, 1970, after petitioner had served the maximum permissible number of years on the "A" and "B" terms, the Adult Authority fixed petitioner's "C" term at 10 years, and entered on its records an "administrative" discharge of the "C" term retroactive to January 8, 1969, the date upon which he had completed service of 10 years on that term. At the same time the Authority fixed petitioner's "D" term at five and one-half years with a discharge date of July 8, 1974, and set a parole date of December 14, 1970. The Authority intended by this order to cause the "D" term to commence retroactively as of January 8, 1969, the date of the discharge from the "C" term.

The Authority suspended petitioner's parole on January 7, 1972. By operation of Adult Authority policies then in effect, that suspension automatically caused any incompleted terms to be refixed at maximum. On March 14, 1972, in conjunction with the formal revocation of parole, the Authority again fixed the "C" term at 10 years, and this time fixed the "D" term at 6 years with a January 8, 1975 expiration date. Petitioner was again released on parole, but on April 27, 1973, his parole was suspended, again causing his terms to be refixed at maximum. On December 13, 1973, parole was formally revoked. His terms have not been refixed at less than maximum since that date. Although petitioner had served the period from January 8, 1969, to April 27, 1973, on his "D" term, the effect of refixing his "C" term at the life maximum, according to respondent, was to deny him any credit on the "D" term because that

term could not commence until his discharge from the "C" term. Therefore, although 16 years have passed since petitioner was sentenced on the escape conviction, and even though he had once been given credit for service of over 4 years on that term, respondent now considers him to be serving only the "C" or robbery term. According to respondent, his "D" or escape term has not commenced. Thus petitioner, having once reached the goal of "administrative discharge" from his "C" term, and having embarked on service of his "D" term, like Sisyphus finds himself back again at the beginning, destined to endlessly repeat his own odyssey through the term-fixing process.

■ Petitioner challenges his continued imprisonment and respondent's assertion of authority over him on several grounds, but the first is dispositive. He claims that the "D" term was consecutive *only* to the "A" (forgery) and "B" (concealed weapon) terms and was concurrent with the "C" (robbery) term. He argues that the order of the sentencing judge did not purport to make the "D" term consecutive to the "C" term, and that even had the judge attempted to order that the "D" term be consecutive to the "C" term, he lacked authority to do so. Following this theory he reasons that his "C" term expired on January 8, 1969, as determined by the Adult Authority action of October 8, 1970, fixing it at 10 years. Based on the action of the same date fixing his "D" term at five and one-half years, he reasons that this term, too, has expired since it commenced on the date he would otherwise have been discharged from the "A" and "B" terms he was serving at the time of the escape. Whether the "D" term commenced in 1963 upon expiration of the statutory maximum of fourteen years for the "A" term or in 1961 based on expiration of the eight-year "A" term and five-year "B" term that had been fixed by the Authority on October 6, 1958, and upon which expiration presumably he "would otherwise have been discharged" need not be decided, since under either approach the five-and-one-half year "D" term which the Authority set on October 8, 1970, would have been served no later than 1969.

Respondent contends that it continues to have jurisdiction over petitioner because he has not yet been discharged from either the "C" or the "D" term. Relying on *In re Cowen* (1946) 27 Cal.2d 637 [166 P.2d 279], and *In re Byrnes* (1948) 32 Cal.2d 843 [198 P.2d 685], it argues first that the "D" term is consecutive to the "C" term, and that since consecutive terms are considered to be a single, continuous term of imprisonment it was proper to refix petitioner's "C" term even after he had been "administratively discharged" therefrom because he had not

yet completed the "D" term. Alternatively, respondent argues that if because the "C" and "D" terms are concurrent rather than consecutive, *Cowen* and *Byrnes* do not control, it still has jurisdiction over petitioner even though he had already served five and one-half years at the time the term was fixed in 1970 because the term was refixed at the life maximum on April 27, 1973, prior to the *expiration date* that had been set earlier.[6] Respondent further argues that even though petitioner had served the full term it had fixed, it nonetheless has jurisdiction over petitioner because when it fixed the "C" and "D" terms at ten and five and one-half years respectively on October 8, 1970, it was under a misapprehension as to petitioner's legal status and did not intend to waive jurisdiction over him.

The Adult Authority is empowered to "determine and redetermine" (§ 3020) the duration of the imprisonment of any person sentenced under the provisions of the Indeterminate Sentence Law. (§ 1168.) With regard to prisoners serving consecutive terms, section 3021 provides: "When a prisoner has imposed upon him two or more cumulative or consecutive sentences, the Adult Authority may determine and redetermine after the expiration of six months of his first sentence, what length of time he shall serve on all such cumulative or consecutive sentences."

Section 2940 also specifies, however, that: "Where the Adult Authority is authorized to fix and refix the term of imprisonment of a prisoner, such prisoner shall be discharged from custody upon the completion of said term so fixed or refixed and if the Adult Authority fails to fix the term of imprisonment the prisoner shall be discharged upon the completion of the maximum punishment provided by law for the offense for which the prisoner was convicted."

Respondent does not dispute petitioner's claim that by its express language section 4531 mandated that the term for escape commence "at the time he would otherwise have been discharged," nor does respondent deny that in sentencing petitioner the court used the statutory language, or that petitioner was serving only the "A" and "B" terms at the time he escaped. Respondent concedes that section 4531 requires only that the escape term commence at the time of petitioner's discharge from the "A" and "B" terms. It is suggested, however, that the sentencing judge was not so limited because application of the mandatory consecutive term

---

[6]On March 14, 1972, the "D" term had been refixed at six years, but on April 27, 1973, it was again refixed at maximum when a new grant of parole was revoked.

provision of section 4531 does not limit the court's power under section 669[7] to order a term to be consecutive to any prior incompleted terms.

Even were we to assume that the sentencing judge, who used the language of section 4531 and made absolutely no reference to the robbery ("C") term,[8] intended that the escape term be consecutive to the robbery term, we could not adopt the construction of section 4531 suggested by respondent. The section, as does section 4530 now, required that an escape term commence at the time the escapee would have been discharged from the terms he was serving at the time of the escape. It is impossible for such a term to begin both at that time and at another, later time when the prisoner has earned a discharge from a term imposed subsequent to the escape. The specific provisions of section 4531 must therefore prevail over the general provisions of section 669. It was happenstance that petitioner was tried first for the robbery committed after the escape. Had he been convicted and sentenced for the offenses in the order of their commission the question could not have arisen. In imposing the sentence for robbery the judge then could have ordered that the robbery term be consecutive to the escape term,[9] but the judge

---

[7]Section 669: "When any person is convicted of two or more crimes, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same judge or by different judges, the second or other subsequent judgment shall direct whether the terms of imprisonment or any of them to which he is sentenced shall run concurrently, or whether the imprisonment to which he is or has been sentenced upon the second or other subsequent conviction shall commence at the termination of the first term of imprisonment to which he has been sentenced, or at the termination of the second or subsequent term of imprisonment to which he has been sentenced, as the case may be; provided, however, if the punishment for any of said crimes is expressly prescribed to be life imprisonment, whether with or without possibility of parole, then the terms of imprisonment on the other convictions, whether prior or subsequent, shall be merged and run concurrently with such life term. . . . Upon the failure of the court so to determine how the terms of imprisonment on the second or subsequent judgment shall run, the term of imprisonment on the second or subsequent judgment shall run concurrently. . . ."

[8]Respondent argues that the judge did order that the escape term be consecutive to "any prior incompleted terms." The only support for that claim appears to be the printed parenthetical entry on the abstract of judgment form directing the judge to enter above it how the newly imposed term is to run, "whether concurrent or consecutive as to all incomplete sentences." As noted earlier, the typewritten entry "same as above" referred to the order made in the statutory language of section 4531.

Furthermore, the abstract may not modify or enlarge upon the judgment as actually pronounced by the court. (§ 1213.5; *People* v. *Hartsell* (1973) 34 Cal.App.3d 8, 14 [109 Cal.Rptr. 627].) In pronouncing judgment on petitioner the court said only: "It will be the order of the court then that he also be committed to the state prison for the term prescribed by law, the sentence to run at the time he would otherwise have been discharged."

[9]There is no suggestion that he would have done so since the term was made concurrent with the "A" and "B" terms.

who sentenced petitioner for the escape had no more discretion to make the term consecutive to any term or terms other than those being served by petitioner at the time of the escape than he had to order that a mandatory consecutive term be concurrent with those terms. (See *In re Sandel* (1966) 64 Cal.2d 412, 416 [50 Cal.Rptr. 462, 412 P.2d 806]; *In re Shull* (1944) 23 Cal.2d 745, 749-750 [146 P.2d 417]; *In re Tinsley* (1960) 178 Cal.App.2d 15, 17 [2 Cal.Rptr. 642].)

Apparently recognizing that it has misinterpreted the 1959 escape judgment, and that its treatment of the "D" term as consecutive to the "C" term has been erroneous, respondent asserts that since a prisoner has no right to a term fixed at less than maximum petitioner will not be denied due process if it is now permitted to refix the "C" and "D" terms because the prior discharge was inadvertent and it did not intend to waive jurisdiction over petitioner. Alternatively respondent argues that it should be permitted to do so because petitioner had not completed serving the 15½-year "total term" (i.e., the 10-year "C" (robbery) term and the 5½-year "D" (escape) term), when the "C" term was refixed at life in 1973.

Respondent's argument is unpersuasive. The Authority did not purport to fix a "total term," nor does it have the power to do so. Terms are to be fixed individually. Respondent suggests that *In re Allen* (1965) 239 Cal.App.2d 23 [48 Cal.Rptr. 345], supports its claim that its lack of intent to waive jurisdiction may be considered in determining the effect of the 1970 action fixing petitioner's terms. There, however, the petitioner was undergoing consecutive terms. At a time when he had completed service of the first term (which had a statutory maximum of 10 years, as fixed by the Authority at 2 years and 9 months so as to establish a retroactive administrative discharge, and was serving the second term which had been fixed at the statutory maximum of 5 years), the court set aside the latter term on grounds that it violated the proscription of multiple punishment of section 654.[10] Before that time, however, petitioner had violated his parole and the Authority had refixed both terms at maximum. The petitioner argued that he was entitled to his immediate release since he had already been administratively discharged

---

[10]Section 654: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other. In the cases specified in Sections 648, 667, and 668, the punishments therein prescribed must be substituted for those prescribed for a first offense, if the previous conviction is charged in the indictment and found by the jury."

from the first term before it was refixed at maximum. The court rejected that claim holding that because petitioner had not yet served either the "continuous term" of seven years and nine months fixed by the Authority or the maximum term for either of the offenses at the time the Authority refixed his terms at maximum it had not lost its power to do so. As is apparent *Allen* does not hold that a lack of intent to surrender jurisdiction over a prisoner has any effect on the finality an order fixing a term acquires once the term *as fixed* has expired. *Allen* was predicated on the theory that consecutive terms constitute a single, continuous term of imprisonment and may be refixed at any time until the longest has expired or the statutory maximum has been served. (*In re Cowen, supra,* 27 Cal.2d 637; *In re Byrnes, supra,* 32 Cal.2d 843.)

█ Respondent's further reliance on cases related to the relinquishment of physical custody to another jurisdiction in support of its assertion of further jurisdiction over this petitioner is misplaced. Those cases did not involve the term-fixing functions of the Authority or the statutory mandate of section 2940 that a prisoner be discharged upon the expiration of his term as fixed or refixed by the Authority. No exception to this mandate exists for actions taken under an erroneous interpretation of either the applicable law or the provisions of a judgment. Only if the discharge were unauthorized by law, as in the case of a prisoner undergoing a life sentence, could the Authority continue to assert jurisdiction. In other cases, once a term has expired, the Authority has no power to revive it.

█ Petitioner's "C" (robbery) term was fixed at 10 years on October 8, 1970. Since he had already served that length of time, and since he was not serving a consecutive term, that action irrevocably terminated the "C" term as of January 8, 1969. On October 8, 1970, the Authority also fixed the "D" (escape) term at five and one-half years. Since the "D" term commenced upon expiration of the "A" and "B" terms, which occurred no later than March 24, 1963, the action of October 8, 1970, also terminated the "D" term and petitioner was entitled to be discharged from both terms.

The writ is granted. Respondent is ordered to discharge petitioner from custody upon the finality of this opinion. ■

McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Richardson, J., concurred.

CLARK, J.—I dissent from the majority's unwarranted interference with the Adult Authority's term-fixing discretion.

The Legislature has conferred broad discretion on the Authority to fix terms of incarceration and parole on the merits of each case. (*In re Grey* (1974) 11 Cal.3d 554, 556 [114 Cal.Rptr. 104, 522 P.2d 664].) "The members of the Adult Authority presumably are selected for their experience and expertise in the field of prisoner rehabilitation; the Authority's discretionary determinations are not to be lightly overridden." *(Id.)*

When the Authority had indisputable jurisdiction over petitioner for the rest of his life, it tentatively determined he should serve an additional three years and nine months in prison and on parole prior to discharge. The majority does not contend this determination constituted an abuse of discretion; in light of petitioner's dismal record, such a contention would be frivolous. Nevertheless, overriding the Authority's determination that this repeated felon and parole violator was not ready for release, the majority treats the Authority's action as retroactively discharging petitioner.

Because of petitioner's incorrigible conduct, the facts of this case are complex. But briefly: On 8 October 1970, the Adult Authority fixed petitioner's two life-maximum terms. Petitioner's "C" term (robbery) was fixed at 10 years, to run concurrently with his "A" and "B" terms, resulting in retroactive discharge of the "C" term on 8 January 1969. Petitioner's "D" term (escape) was fixed at five and one-half years, to run consecutively to his "A," "B" and "C" terms. As the majority concedes, "The Authority intended by this order to cause the 'D' term to commence retroactively as of January 8, 1969, the date of the discharge from the 'C' term." (*Ante,* p. 807.)

The majority concludes the Adult Authority misconceived the legal effect of the "D" term. According to the majority, the "D" term was consecutive to the "A" and "B" terms, but not to the "C." Under this theory, petitioner began serving an indeterminate sentence on the "D" term in either 1961 or 1963, rather than 1969. Accordingly, fixing the "D" term at five and one-half years in 1970 granted petitioner a retroactive discharge of that term.

However, the Authority clearly did not intend to retroactively discharge the "D" term. It intended to fix a term that would expire *in the*

*future,* five and one-half years after the "C" term expired in 1969. Although the Authority technically may have been unable to treat the "D" term as consecutive to the "C" term, it certainly had the power to establish a tentative discharge date for the "D" term by using as a reference point the discharge date fixed for the "C" term.

I would deny the writ.