[No. S162413. Aug. 30, 2010.]

In re EDWARD PATRICK MORGAN on Habeas Corpus.

## COUNSEL

Michael G. Millman for Petitioner Edward Patrick Morgan.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Holly D. Wilkens, Randall D. Einhorn and Ronald S. Matthias, Deputy Attorneys General, for Respondent State of California.

## OPINION

**KENNARD, J.**—Thirteen years ago, after he was convicted of capital murder and sentenced to death, indigent petitioner Edward Patrick Morgan invoked his statutory right to this court's appointment of habeas corpus counsel to challenge his conviction and his death sentence. Today, he still lacks such counsel because of a critical shortage of qualified attorneys willing to represent capital prisoners in state habeas corpus proceedings.

Now before us is a cursory one-claim habeas corpus petition, which lacks any supporting exhibits. Petitioner asks us to defer a decision on his petition until we appoint habeas corpus counsel and until that attorney has had a

reasonable opportunity to investigate various factual and legal matters that may lead to additional claims for relief, to be presented in an amended petition. The Attorney General opposes the request, urging us to deny the current petition as meritless. We grant petitioner's request.

## I

In 1996, an Orange County jury convicted petitioner of kidnapping Leona Wong (Pen. Code, § 207),[1] unlawfully penetrating her with a foreign object (§ 289), and murdering her (§ 187). The jury also found true special circumstance allegations that defendant committed the murder in the course of committing the first two crimes. (§ 190.2, former subd. (a)(17)(ii), (xi).) Petitioner's appeal to this court from the judgment of death was automatic. (§ 1239, subd. (b).)

In August 1996, petitioner asked us to appoint counsel to represent him on his automatic appeal to this court (§ 1239, subd. (b)), and to appoint counsel to prepare a habeas corpus petition on his behalf. In March 2000, we appointed counsel to represent petitioner on *appeal*. But today, some 13 and a half years after petitioner's request for appointed *habeas corpus* counsel, we still have not found qualified counsel willing to accept the appointment. (The reasons are set forth in pt. II, *post.*)

In November 2007, this court issued its unanimous opinion in petitioner's appeal. We reversed the conviction for kidnapping and the kidnap-murder special circumstance but otherwise affirmed the judgment, including the sentence of death. (*People v. Morgan* (2007) 42 Cal.4th 593 [67 Cal.Rptr.3d 753, 170 P.3d 129].) In March 2008, the United States Supreme Court denied petitioner's petition for writ of certiorari.

In April 2008, the California Appellate Project (CAP),[2] which has *not* been appointed as petitioner's habeas corpus counsel, filed in this court a petition for writ of habeas corpus on his behalf. Unlike the typical capital habeas

---

[1] Unless otherwise stated, all statutory citations are to the Penal Code.

[2] On its Web site, CAP gives this description of itself: "The California Appellate Project in San Francisco (CAP-SF) is a non-profit corporation established by the State Bar of California in 1983 as a legal resource center to implement the constitutional right to counsel for indigent persons facing execution. CAP serves the largest population of condemned individuals in the country and is funded primarily by a contract with the Judicial Council of California. [¶] CAP-SF assists private counsel appointed by the California Supreme Court to represent indigent defendants in capital cases challenging their convictions and sentences on direct appeal and through habeas corpus proceedings, and provides them with professional training and litigation resource materials. In addition, CAP-SF assists unrepresented death row inmates by collecting and preserving evidence for their post-conviction claims, and by providing advocacy as needed during the period of incarceration before counsel is appointed. CAP-SF

corpus petition, this petition is cursory and lacks supporting exhibits. It alleges just one claim: that trial counsel's prejudicially deficient performance violated petitioner's "right to the effective assistance of counsel and to a fair and reliable determination" of his guilt of the crimes charged, of the truth of the special circumstance allegations, and of the penalty to be imposed. Specifically, petitioner faults his trial counsel for requesting a standard jury instruction (CALJIC No. 4.20) on voluntary intoxication that was allegedly "inapplicable and detrimental" to his case. Petitioner also faults counsel for failing to ask the trial court to instruct the jury that CALJIC No. 4.21 (a standard instruction, given by the court, stating that the jury may consider a defendant's voluntary intoxication when relevant to the defendant's specific intent) "is an exception to the general rule stated in CALJIC No. 4.20." The petition also alleges broadly that petitioner's trial counsel was incompetent because he did not "adequately investigate and present additional evidence at the guilt phase in support of the partial defense of intoxication," and because he did not "present expert testimony at the guilt phase regarding the intoxicating effects of alcohol, cocaine and steroids, and their potential effect on an intoxicated person's ability to form the required specific intent for violating Penal Code section 289 . . ."; the petition, however, alleges no specific facts to support these broad allegations.

Petitioner's prayer for relief asks us to "[p]ermit petitioner to amend this petition within 36 months after the appointment of habeas corpus counsel to include additional claims as determined by habeas corpus counsel [and] [¶] [d]efer informal briefing on this petition, should this Court desire such briefing, until petitioner has filed the amended petition and provided the Court with all reasonably available documentary evidence in support of the allegations in the amended petition."

As it has done here, CAP has filed a cursory petition on behalf of each death row inmate who, upon the finality of the inmate's automatic appeal, lacked habeas corpus counsel. Thus far, this court has granted each petition's request to defer informal briefing and to permit amendment of the petition within 36 months of habeas corpus counsel's appointment.

In June 2008, the Attorney General filed in this court a "Respondent's Motion for Order to Show Cause," requesting us to promptly consider the current petition, to find it lacking in merit, and to summarily deny it. We issued an order construing the Attorney General's request as an opposition to

also consults, at the request of the judiciary, on policy matters regarding indigent defense representation in capital cases." (<http://www.capsf.org/About-CAPSF.asp> [as of Aug. 30, 2010].)

petitioner's request. We asked both parties to submit supplemental briefs on the issue, and we scheduled the matter for oral argument so the parties could express their views in open court. (See Cal. Rules of Court, rule 8.54(b)(2) ["On a party's request or its own motion, the court may place a motion on calendar for a hearing."].)

## II

■ In California, an indigent prisoner who has been convicted of a capital crime and sentenced to death has a *statutory right to the assistance of court-appointed counsel* not only on appeal (*Douglas v. California* (1963) 372 U.S. 353, 356–357 [9 L.Ed.2d 811, 83 S.Ct. 814]; § 1240) but also in a habeas corpus proceeding (Gov. Code, § 68662).[3] The latter right is at issue here. This statutory right to appointed habeas corpus counsel "promotes the state's interest in the fair and efficient administration of justice and, at the same time, protects the interests of all capital inmates by assuring that they are provided a reasonably adequate opportunity to present us their habeas corpus claims." (*In re Barnett* (2003) 31 Cal.4th 466, 475 [3 Cal.Rptr.3d 108, 73 P.3d 1106].)

Ideally, the appointment of habeas corpus counsel should occur shortly after an indigent defendant's judgment of death. An expeditious appointment would enable habeas corpus counsel to investigate potential claims for relief and to prepare a habeas corpus petition at roughly the same time that appellate counsel is preparing an opening brief on appeal. This would ensure the filing of a habeas corpus petition soon after completion of the briefing on the appeal. (See Cal. Supreme Ct., Policies Regarding Cases Arising from Judgments of Death, policy 3, std. 1-1.1 [a habeas corpus petition "will be presumed to be filed without substantial delay if it is filed within 180 days after the final due date for the filing of appellant's reply brief on the direct appeal"].)

But our task of recruiting counsel has been made difficult by a serious shortage of qualified counsel willing to accept an appointment as habeas

---

[3] Government Code section 68662 provides: "The [California] Supreme Court shall offer to appoint counsel to represent all state prisoners subject to a capital sentence for purposes of state postconviction proceedings, and shall enter an order containing one of the following: [¶] (a) The appointment of one or more counsel to represent the prisoner in postconviction state proceedings upon a finding that the person is indigent and has accepted the offer to appoint counsel or is unable to competently decide whether to accept or reject that offer. [¶] (b) A finding, after a hearing if necessary, that the prisoner rejected the offer to appoint counsel and made that decision with full understanding of the legal consequences of the decision. [¶] (c) The denial to appoint counsel upon a finding that the person is not indigent."

corpus counsel in a death penalty case. Quite few in number are the attorneys who meet this court's standards for representation and are willing to represent capital inmates in habeas corpus proceedings. The reasons are these: First, work on a capital habeas corpus petition demands a unique combination of skills. The tasks of investigating potential claims and interviewing potential witnesses require the skills of a trial attorney, but the task of writing the petition, supported by points and authorities, requires the skills of an appellate attorney. Many criminal law practitioners possess one of these skills, but few have both.[4] Second, the need for qualified habeas corpus counsel has increased dramatically in the past 20 years: The number of inmates on California's death row has increased from 203 in 1987 to 670 in 2007. (Cal. Com. on the Fair Admin. of Justice, Final Rep. (2008) p. 121 (California Commission Final Report).)

California does have a Habeas Corpus Resource Center (HCRC), which the California Legislature established in 1998 to represent indigent capital inmates in postconviction habeas corpus matters. (See Gov. Code, § 68661.) But, as has been observed, "the number of cases the HCRC can accept is limited both by a statutory cap on the number of attorneys it may hire and by available fiscal resources." (Alarcon, *Remedies for California's Death Row Deadlock* (2007) 80 So.Cal. L.Rev. 697, 739.)

Although hundreds of indigent death row inmates already have been provided with appointed habeas corpus counsel, approximately 300 of these inmates still lack such counsel. The search for qualified counsel can take

---

[4] Our rules of court provide: "An attorney appointed as lead or associate counsel to represent a person in death penalty-related habeas corpus proceedings must have at least the following qualifications and experience: [¶] (1) Active practice of law in California for at least four years. [¶] (2) Either: [¶] (A) Service as counsel of record for a defendant in five completed felony appeals or writ proceedings, including one murder case, and service as counsel of record for a defendant in three jury trials or three habeas corpus proceedings involving serious felonies; or [¶] (B) Service as counsel of record for a defendant in five completed felony appeals or writ proceedings and service as supervised counsel in two death penalty-related habeas corpus proceedings in which the petition has been filed. . . . [¶] (3) Familiarity with the practices and procedures of the California Supreme Court and the federal courts in death penalty-related habeas corpus proceedings. [¶] (4) Within three years before appointment, completion of at least nine hours of Supreme Court-approved appellate criminal defense or habeas corpus defense training, continuing education, or course of study, at least six hours of which address death penalty habeas corpus proceedings. . . . [¶] (5) Proficiency in issue identification, research, analysis, writing, investigation, and advocacy . . . ." (Cal. Rules of Court, rule 8.605(e).) This court may appoint an attorney who does not meet certain of these requirements if we find that the attorney has other equivalent experience and the attorney can consult with an attorney designated by the court. (Cal. Rules of Court, rule 8.605(f).)

eight to 10 years or longer. (Cal. Com. Final Rep., *supra*, at p. 122.) Here, petitioner still does not have habeas corpus counsel after 13 years on death row.[5]

■ In filing a cursory one-claim habeas corpus petition now rather than awaiting this court's appointment·of habeas corpus counsel who could file a more thorough petition at some future date, petitioner's apparent purpose is to preserve his right to seek habeas corpus relief in the federal courts. Remedies in state court must be exhausted (see 28 U.S.C. § 2254(b)(1)(A)) before a state prisoner can seek habeas corpus relief in the federal courts, which require that the habeas corpus petition be filed within *one year* from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" (28 U.S.C. § 2244(d)(1)(A)). A judgment of death is "final" upon the United States Supreme Court's denial of a capital inmate's petition for writ of certiorari after our affirmance of the judgment, or upon expiration of the time in which the inmate may seek certiorari in the federal high court. (*Bowen v. Roe* (9th Cir. 1999) 188 F.3d 1157, 1159–1160.) To permit the inmate to exhaust state remedies as to claims that must be raised in a habeas corpus petition rather than on appeal, the federal statute of limitations is tolled while there is pending in state court a "properly filed application for State post-conviction or other collateral review." (28 U.S.C. § 2244(d)(2).)[6]

If consideration of the current habeas corpus petition is deferred as petitioner has requested, and if that petition is ultimately denied in this court, presumably petitioner will then seek habeas corpus relief in federal court challenging his state court conviction and judgment of death, and asserting the tolling of the federal statute of limitations during the pendency of his current petition in our court. To date, no published federal court decision has addressed this specific tolling issue under federal law. We express no view on this issue, observing only that a denial of the *current* habeas corpus petition, a result advocated by the Attorney General, would immediately stop the tolling of the federal statute of limitations.

---

[5] The concurring and dissenting opinion asserts that our practice of deferring consideration of cursory habeas corpus petitions filed by unrepresented defendants "eliminates any urgency to secure counsel" (conc. & dis. opn., *post*, at p. 942) as a result of which "capital inmates may languish without representation for several years" (*ibid.*). This practice should have no effect on the urgency of our efforts to recruit qualified habeas corpus counsel to represent death row inmates, and it has not had such effect.

[6] Title 28 United States Code section·2244(d)(2) provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

## III

Relying primarily on this court's decision in *In re Clark* (1993) 5 Cal.4th 750 [21 Cal.Rptr.2d 509, 855 P.2d 729] (*Clark*), the Attorney General argues that in light of "longstanding state precedent," we should not defer consideration of the current habeas corpus petition.

■ We stated in *Clark*: "The law mandates prompt disposition of habeas corpus petitions (§ 1476), and the interest of the state in the finality of judgment weighs heavily against delayed disposition of pending petitions." (*Clark, supra,* 5 Cal.4th at p. 782.) Accordingly, this court "must and will assume . . . that a petition for writ of habeas corpus includes all claims then known to the petitioner. Summary disposition of a petition which does not state a prima facie case for relief is the rule." (*Id.* at pp. 780–781.)

■ *Clark* further stated: "The inclusion in a habeas corpus petition of a statement purporting to reserve the right to supplement or amend the petition at a later date has no effect. The court will determine the appropriate disposition of a petition for writ of habeas corpus based on the allegations of the petition as originally filed and any amended or supplemental petition for which leave to file has been granted." (*Clark, supra,* 5 Cal.4th at p. 781, fn. 16; see also *In re Haygood* (1975) 14 Cal.3d 802, 805 [122 Cal.Rptr. 760, 537 P.2d 880].) This court will not "routinely delay action on a filed petition to permit amendment and supplementation of the petition." (*Clark, supra,* at p. 781.) The purpose of these habeas corpus rules is to enable this court, whenever possible, to consider all of a petitioner's claims simultaneously and expeditiously, rather than piecemeal.

■ It is not a practice of this court to *routinely* defer a decision on a habeas corpus petition and to permit its amendment so additional claims can be raised. (*Clark, supra,* 5 Cal.4th at p. 781.) But an exception is called for because of the critical shortage of qualified counsel willing to accept appointment as habeas corpus counsel in a capital case. As explained earlier, in California an indigent prisoner who is under a court judgment of death has a statutory right to the assistance of appointed counsel to pursue habeas corpus relief. Here, petitioner invoked that right some 13 years ago. Due to circumstances beyond our control (see pp. 937–938, *ante*), we have not yet been able to find a qualified attorney willing to accept appointment as habeas corpus counsel for petitioner. Had there been reasonably prompt compliance with petitioner's request, presumably he could have filed a timely habeas

corpus petition in this court and, if that petition was denied, he could have filed a timely habeas corpus petition in federal court.[7]

The Attorney General characterizes the current petition that CAP has filed on petitioner's behalf as nothing more than a "shell petition," filed solely to toll the federal statute of limitations, and he urges us to compel petitioner to file a "real habeas petition in a genuine effort to exhaust state remedies." It would be grossly unfair, however, to impose this difficult task on petitioner himself, an indigent death row inmate who is untrained in the law and statutorily entitled to appointed habeas corpus counsel. The advantages of having an experienced attorney prepare and file a habeas corpus petition were succinctly summed up in a prior decision of this court: "[W]ith their formal legal training, professional experience, and unrestricted access to legal and other resources, counsel possess distinct advantages over their inmate clients in investigating the factual and legal grounds for potentially meritorious habeas corpus claims and in recognizing and preparing legally sufficient challenges to the validity of the inmates' death judgments." (*In re Barnett, supra*, 31 Cal.4th at p. 477.)

As noted earlier, the current one-claim petition was prepared and filed by CAP, which is not acting in the capacity of appointed habeas corpus counsel, but is performing its task of "providing advocacy as needed during the period of incarceration before counsel is appointed." (CAP Web site, *supra*; see fn. 2, *ante*.) In light of CAP's limited resources, the current petition is by necessity quite cursory.

The Attorney General argues that federal habeas corpus proceedings are "costly, disruptive, and counter-effective to the enforcement of state law" and that therefore this court should not defer consideration of the petition now before us. But whether federal habeas corpus proceedings are, as the Attorney

---

[7] According to the concurring and dissenting opinion, this court's practice of deferring consideration of cursory habeas corpus petitions filed by unrepresented petitioners is "essentially a gesture of largesse from this court" (conc. & dis. opn., *post*, at p. 947) that "serve[s] no state interest" (*id.*, at p. 946). To the contrary, California's "state interest" in providing death row inmates with qualified habeas corpus counsel is reflected in its statutory scheme (Gov. Code, § 68662), and our practice of deferring consideration of cursory habeas corpus petitions is an attempt to remedy a consequence of this court's inability, due to circumstances beyond our control, to timely provide such inmates with the legal representation that is theirs by right.

The concurring and dissenting opinion asserts that this court's practice of deferring consideration of cursory habeas corpus petitions filed by unrepresented petitioners "will inevitably contribute to the lengthy delays our state experiences in resolving capital cases." (Conc. & dis. opn., *post*, at p. 946.) What is causing the delay, however, is not that practice but this court's inability so far to recruit qualified habeas corpus counsel for each of the hundreds of death row inmates.

General contends, detrimental to the enforcement of state law is not at issue here. At issue is whether this court should defer consideration of petitioner's incomplete habeas corpus petition (filed without the assistance of appointed counsel) to avoid potential prejudice to his right to seek federal habeas corpus relief in the federal courts. The source of this potential prejudice is this court's lengthy but unavoidable delay in recruiting qualified counsel willing to accept an appointment as habeas corpus counsel for petitioner, a death row inmate.

In light of the unusual circumstances presented, we grant petitioner's request to defer a decision in this matter until we have appointed habeas corpus counsel and until that attorney has had a reasonable opportunity to investigate various factual and legal matters for potentially meritorious claims to be presented in an amended habeas corpus petition. If we ultimately deny the petition, any issue pertaining to the adequacy of petitioner's compliance with the federal statute of limitations governing habeas corpus petitions is for the federal courts to decide.

### DISPOSITION

We grant petitioner's request to defer consideration of his current habeas corpus petition pending the appointment of habeas corpus counsel by this court and the filing of an amended petition within 36 months of counsel's appointment. The Attorney General's motion in opposition to that request is denied.

George, C. J., Werdegar, J., Chin, J., and Moreno, J., concurred.

**CORRIGAN, J.,** Concurring.—I concur in the disposition of this case and *In re Zamudio Jimenez* (2010) 50 Cal.4th 951 [114 Cal.Rptr.3d 605, 237 P.3d 1004], because it appears the petitions were filed in reliance on this court's informal practice of accepting them. However, I strongly believe we should no longer allow the filing of "shell" habeas corpus (sometimes referred to as "habeas") petitions. Shell petitions are not true petitions at all, but merely placeholders designed to toll the federal statute of limitations. Further, shell petitions serve no state interest. California's obligation to ensure due process for capital defendants is addressed by our state's established appellate and habeas corpus procedures. Perversely, the practice of accepting shell petitions ill serves both defendants and the public. Because it eliminates any urgency to secure counsel, capital inmates may languish without representation for several years. The practice also burdens this court and adds greatly to the long delays in death penalty proceedings. It is our obligation to find qualified

counsel for capital habeas corpus cases. We should seriously consider how we are discharging that obligation in light of the delays the majority describes. It is not, however, our proper role to help one class of convicted inmates evade a federal statute of limitations. I therefore dissent from the majority's holding approving shell petitions.

## I. *Background*

Congress's enactment of a one-year statute of limitations for federal habeas corpus petitions created special problems for death row inmates in California. Although capital inmates have a statutory right to counsel for both their state (Gov. Code, § 68662) and federal (18 U.S.C. § 3599(a)(2)) habeas claims, it has typically taken many years, even after the judgment is final on appeal, before a lawyer can be found who will represent a capital inmate in state postconviction proceedings. This delay does not compromise the inmate's state habeas petition, because we presume such a petition to be timely so long as it is brought within three years after the appointment of habeas corpus counsel. (Cal. Supreme Ct., Policies Regarding Cases Arising from Judgments of Death, policy 3, std. 1-1.1.) However, the short limitations period mandated for federal habeas petitions by AEDPA[1] differs from California's substantially more generous timeliness rules. Because of endemic delays in our state's appointment of capital habeas counsel, the federal statute of limitations can expire before an inmate can "stop the clock" with a properly filed state habeas petition. (28 U.S.C. § 2244(d)(2) (section 2244(d)(2)) [providing that the federal limitations period is tolled during the time "a properly filed application for State post-conviction or other collateral review" is pending].) When AEDPA was first passed, California's capital inmates who wished to preserve their federal remedies faced a difficult choice. They could either file a state habeas petition without the benefit of counsel, to stop the federal clock, or file a timely federal habeas petition but risk its dismissal for the failure to exhaust all claims in state court. (See *Rose v. Lundy* (1982) 455 U.S. 509 [71 L.Ed.2d 379, 102 S.Ct. 1198].)[2]

The first shell petition filing was allowed in December 2001, in the case of *In re Taylor*, S102652. Taylor's habeas counsel had withdrawn relatively

---

[1] Antiterrorism and Effective Death Penalty Act of 1996 (Pub.L. 104-132, Apr. 24, 1996, 110 Stat. 1214; see 28 U.S.C. § 2244(d)(1)(A)).

[2] The federal courts have since resolved this dilemma by adopting a stay and abeyance procedure. Rather than dismissing a petition containing unexhausted claims, the district court now has discretion to stay action on it while the petitioner returns to state court to exhaust all remedies. (See *Rhines v. Weber* (2005) 544 U.S. 269 [161 L.Ed.2d 440, 125 S.Ct. 1528].)

late in the proceedings, and the Habeas Corpus Resource Center (HCRC) refused to accept an appointment unless we allowed it to file a shell petition. After informal discussions with HCRC and with no input from the Attorney General, we agreed to accept a placeholder, or "shell," petition in that *one* case. The sole purpose of the shell petition was to toll the federal statute of limitations while HCRC investigated and prepared a substantive state habeas petition. The shell petition procedure thus originated as an informal accommodation made to secure representation under the unusual circumstances of that single case. It was adopted after discussions with only one side, and it has never been approved in a formal rule. Nevertheless, the practice of filing shell petitions has become almost routine in capital cases. We have accepted more than 50 shell habeas petitions in the ensuing nine years. Yet, of all these shell petitions, only two have been litigated to conclusion in this court. Our habeas docket has become the extended home for an increasing number of capital cases, and the problem is likely to worsen. Michael Laurence, executive director of HCRC, stated at oral argument that there are currently 322 capital inmates in California without habeas corpus counsel. Two-thirds of these cases are advancing toward finality because a lawyer has been appointed for the direct appeal.

## II. *The Shell Petition Procedure Disserves California's Interests*

This court does continue to have great difficulty finding counsel to represent capital inmates in habeas matters. However, allowing capital inmates to delay federal postconviction consideration through a sham procedure is not an appropriate response. The shell petition procedure not only puts an unreasonable strain on this court, it also undermines California's strong interest in the finality of its judgments. Furthermore, it runs directly contrary to our own well-established precedent.

Our cases have long emphasized that habeas corpus is an extraordinary remedy "and that the availability of the writ properly must be tempered by the necessity of giving due consideration to the interest of the public in the orderly and reasonably prompt implementation of its laws and to the important public interest in the finality of judgments." (*In re Robbins* (1998) 18 Cal.4th 770, 778 [77 Cal.Rptr.2d 153, 959 P.2d 311]; see also *In re Clark* (1993) 5 Cal.4th 750, 764 [21 Cal.Rptr.2d 509, 855 P.2d 729].) We have developed a variety of procedural rules governing proper use of the writ to serve these important public interests and to "protect[] the integrity of our own appeal and habeas corpus process." (*In re Robbins*, at p. 778, fn. 1, italics omitted.) One such rule is this court's long-standing refusal to consider successive petitions, whether they raise claims previously urged or state new grounds for relief that were known when a previous petition was filed. (*In re Clark*, at pp. 769–770; *In re Horowitz* (1949) 33 Cal.2d 534, 546–547 [203 P.2d 513].)

As Justice Baxter explained for the majority in *Clark*, the rule against successive petitions is grounded in considerations of fundamental importance: "When a habeas corpus petition is denied on the merits, the court has determined that the claims made in that petition do not state a prima facie case entitling the petitioner to relief. A successive petition presenting additional claims that could have been presented in an earlier attack on the judgment is, of necessity, a delayed petition. [There is] no persuasive reason for routinely permitting consideration of the merits of such claims. Were we to do so we would sanction a practice which unreasonably delays execution of judgment and imposes undue burdens on the state both in responding to claims made in delayed petitions and in marshalling stale evidence when retrial is necessary. Successive petitions also waste scarce judicial resources as the court must repeatedly review the record of the trial in order to assess the merits of the petitioner's claims and assess the prejudicial impact of the constitutional deprivation of which he complains. [¶] Willingness by the court to entertain the merits of successive petitions seeking relief on the basis of the same set of facts undermines the finality of the judgment. Moreover, such piecemeal litigation prevents the positive values of deterrence, certainty, and public confidence from attaching to the judgment. The values that inhere in a final judgment are equally threatened by petitions for collateral relief raising claims that could have been raised in a prior petition." (*In re Clark, supra*, 5 Cal.4th at p. 770.)

A corollary of the rule against successive petitions is the rule that all known claims must be brought in a *single*, timely habeas corpus petition. (*In re Clark, supra*, 5 Cal.4th at pp. 780–782, 797.) A petitioner cannot delay, then seek to add claims to a petition at a later date. We explained in *Clark* that, if a petitioner "is aware of facts adequate to state a prima facie case for habeas corpus relief," the petition should include a claim based on these facts "even if the claim is not fully 'developed.' " (*Id*. at p. 781.) Nor should a petitioner expect the court to delay action on a petition to permit future amendment. "The court must and will assume . . . that a petition for writ of habeas corpus includes all claims then known to the petitioner." (*Id*. at pp. 780–781.) Further, we expressly cautioned in *Clark* that "[t]he inclusion in a habeas corpus petition of a statement purporting to reserve the right to supplement or amend the petition at a later date *has no effect*." (*Id*. at p. 781, fn. 16, italics added.)

The shell petition procedure is in obvious conflict with these important rules. It was created and has been perpetuated to benefit only one side, in postconviction litigation in a different forum. It is even more remarkable for the court to exempt death row inmates from the long-standing rule against successive habeas petitions, considering that these are the prisoners with the most incentive to delay.

Shell petitions will inevitably contribute to the lengthy delays our state experiences in resolving capital cases. Petitioner advised this court that Louisiana has also adopted a shell petition procedure for tolling the AEDPA statute of limitations. (See *State ex rel. Weary v. State* (La. 2009) 12 So.3d 968, 969, fn. 3.) Notably, however, two justices of the Louisiana Supreme Court recently complained of excessive delays and urged the state to reconsider its use of the shell procedure. They wrote: "The delays caused in post-conviction proceedings by filing 'shell' applications and the granting of continuances have unreasonably delayed the finality of death penalty cases. This practice has effectively stopped the State from carrying out the sentence in capital cases at a great expense to the State. It appears our courts have had little effect in discouraging these delaying techniques. It is probably appropriate now for the Legislature to address this aspect of post-conviction proceedings if this State is going to continue to have capital sentences." (*Id.* at p. 970 (conc. & dis. opn. of Knoll, J.).)

Not only do shell petitions exacerbate delay, they serve no state interest. The Legislature has granted capital inmates a right to counsel. (Gov. Code, § 68662.) This court has adopted generous rules for compensating these attorneys and generous timelines for them to litigate state habeas petitions. (See Cal. Supreme Ct., Payment Guidelines for Appointed Counsel Representing Indigent Criminal Appellants in the California Supreme Court, guideline 2.) According to our internal estimates, the average cost to pay private counsel for handling the *direct appeal* in a capital case ranges from $180,000 to $250,000. In the rare instances when an attorney handles both the appeal and the habeas corpus petition, the median fixed-fee compensation is around $283,000, with an additional $50,000 provided to reimburse investigation expenses. The typical cost to pay a second private attorney for preparing a separate state habeas petition ranges from $230,000 to $250,000 in fixed-fee compensation, or up to $300,000 in hourly compensation. Thus, when different attorneys handle the appeal and state habeas petition, their compensation can easily reach or exceed $500,000.

Shell petitions do nothing whatsoever to promote the state's interest in providing counsel to habeas corpus petitioners, nor its interest in having all capital habeas claims decided first by California courts.[3] Moreover, the United States Supreme Court has made clear that a state's delay in appointing state habeas counsel does not make the state accountable for an inmate's failure to satisfy the statute of limitations for seeking federal habeas relief. In *Lawrence v. Florida* (2007) 549 U.S. 327, 336–337 [166 L.Ed.2d 924, 127 S.Ct. 1079], a capital prisoner argued he was entitled

---

[3] Even if the conflicting timeliness rules required capital prisoners to file habeas corpus petitions in federal court first, federal exhaustion rules would still ensure that the claims were first addressed in a state forum.

to equitable tolling because an attorney who was appointed and supervised by the state courts had miscalculated the federal limitations period. The Supreme Court rejected this argument, noting that the petitioner had not alleged the state prevented him from hiring his own attorney or representing himself. (*Id.* at p. 337.)[4] The court observed: "[A] State's effort to assist prisoners in postconviction proceedings does not make the State accountable for a prisoner's delay. . . . *It would be perverse indeed if providing prisoners with postconviction counsel deprived States of the benefit of the AEDPA statute of limitations.*" (*Lawrence*, at p. 337, italics added.)

The shell procedure is essentially a gesture of largesse from this court. Its sole purpose is to help capital inmates preserve their ability to launch additional collateral attacks on their convictions in federal court.[5] It is true that the AEDPA statute of limitations puts unrepresented capital inmates in a difficult position. However, California already provides its own more generous system for habeas review. The federal government is free to regulate its own system, and, in fact, the federal courts have developed their own procedural solution to the problem at hand.

III. *The Federal "Stay and Abeyance" Procedure Is Preferable*

Shortly after AEDPA went into effect, Justice Stevens identified the procedural conflict created by the intersection of AEDPA's one-year statute of limitations and the high court's holding in *Rose v. Lundy, supra*, 455 U.S. 509, that habeas petitions containing any unexhausted claims must be dismissed without prejudice to refiling after the claims have been exhausted. (*Duncan v. Walker* (2001) 533 U.S. 167, 182–183 [150 L.Ed.2d 251, 121 S.Ct.

---

[4] The court assumed without deciding that 28 United States Code section 2244(d) permits equitable tolling. (*Lawrence v. Florida, supra*, 549 U.S. at p. 336.) Recently, the court confirmed that the AEDPA statute of limitations is subject to equitable tolling. (*Holland v. Florida* (2010) 560 U.S. ___ [177 L.Ed.2d 130, 130 S.Ct. 2549].)

[5] We do not even know if the gambit will be successful. It remains uncertain whether federal courts will ultimately construe a shell petition to be "properly filed" for purposes of statutory or equitable tolling. (Compare *Voravongsa v. Wall* (1st Cir. 2003) 349 F.3d 1, 7 [under R.I. law, pro se prisoner's application for appointment of counsel in state habeas corpus proceedings was not a "properly filed application" sufficient to toll the AEDPA statute of limitations] with *Isley v. Arizona Dept. of Corrections* (9th Cir. 2004) 383 F.3d 1054, 1055–1056 [under Ariz. law, prisoner's filing of a "Notice of Post-Conviction Relief," which invoked the right to counsel, was sufficient to toll the federal statute of limitations], overruled on a related point in *Summers v. Schriro* (9th Cir. 2007) 481 F.3d 710; see also *Jihad v. Hvass* (8th Cir. 2001) 267 F.3d 803 [holding that the inability to retain counsel is not an extraordinary circumstance justifying equitable tolling].) Although the federal courts will likely defer to our state rules in determining whether a petition has been properly filed (see *Artuz v. Bennett* (2000) 531 U.S. 4 [148 L.Ed.2d 213, 121 S.Ct. 361]), a capital habeas petition is not considered "pending" under federal law unless it seeks an adjudication on the merits. (*Woodford v. Garceau* (2003) 538 U.S. 202, 206–207 [155 L.Ed.2d 363, 123 S.Ct. 1398].) Shell petitions do not satisfy this requirement because they seek only to *delay* an adjudication on the merits.

2120] (conc. opn. of Stevens, J.).) Because the court in *Duncan* held that the limitations period is not tolled while a petition is pending in federal court, by the time a federal district court determined that some claims required exhaustion, a petitioner could find that the AEDPA statute of limitations had expired, precluding federal review of *any* of his claims. (*Duncan*, at p. 182.) Justice Stevens remarked, "[I]n our post-AEDPA world there is no reason why a district court should not retain jurisdiction over a meritorious claim and stay further proceedings pending the complete exhaustion of state remedies. Indeed, there is every reason to do so . . . ." (*Id.* at pp. 182–183.) When confronted with this precise problem four years later, the Supreme Court unanimously approved the stay and abeyance procedure. In *Rhines v. Weber, supra*, 544 U.S. 269, the court held that when a state prisoner files a "mixed" habeas corpus petition in federal court containing some claims that have been exhausted and some that have not, the district court has discretion to stay proceedings on the mixed petition and hold it in abeyance while the petitioner returns to state court to litigate the unexhausted claims. Although mixed petitions should not be stayed indefinitely, particularly in capital cases where petitioners have a strong incentive to delay, the court warned that "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." (*Id.* at p. 278.)

The stay and abeyance procedure approved by the Supreme Court offers California's capital inmates an established means of preserving their federal habeas claims. A federal statute created the timeliness problems these prisoners face, and the federal courts have crafted a solution. Rather than unilaterally inventing our own special procedures that may or may not allow capital inmates to evade the AEDPA statute of limitations, we should end the shell petition practice and direct these inmates to follow the federal stay and abeyance path.

This approach would require capital inmates to file a habeas petition in federal district court within one year after their conviction is final. Our difficulty finding attorneys to represent these prisoners in habeas matters would not necessarily be an obstacle to this filing because capital inmates have a statutory right to counsel in federal postconviction proceedings. (18 U.S.C. § 3599(a)(2).) This right to counsel attaches *before* the filing of a federal habeas petition, and it is invoked when a capital prisoner files an application in federal court seeking appointment of an attorney. (*McFarland v. Scott* (1994) 512 U.S. 849, 856–857 [129 L.Ed.2d 666, 114 S.Ct. 2568].) The legal obligation would therefore be on the federal system to appoint counsel in time to prepare the federal habeas petition.

For a petitioner to benefit from the stay and abeyance procedure, the federal petition would have to contain a mixture of exhausted and unexhausted claims. In addition to exhausted claims, which were litigated to conclusion on direct appeal, petitioners would have to allege the factual basis for possible unexhausted claims they might wish to litigate in federal habeas proceedings. New claims for relief in an amended petition do not relate back to the original petition, thus making them timely, unless they arise from the same " 'conduct, transaction, or occurrence' " set forth in the original petition. (*Mayle v. Felix* (2005) 545 U.S. 644, 649 [162 L.Ed.2d 582, 125 S.Ct. 2562].) Certainly, it might be difficult to identify all potential new claims within a year after an inmate's conviction has become final on appeal. Indeed, the timeframe may be even shorter if the district court is slow to appoint counsel. But these limits on the availability of the federal writ were imposed by Congress and the federal courts. It is remarkable that we would formally adopt a procedure designed solely to help capital prisoners evade them. Further, we should be mindful that capital cases take years to litigate in the trial court and many more years to resolve by direct appeal. It is not unreasonable to expect that a capital defense team at least contemplate potential habeas claims during this lengthy period.

## IV. *Conclusion*

If California's system worked as intended, habeas counsel would be appointed for capital defendants during the litigation of their direct appeals. Such counsel would have ample time to investigate, prepare, and file state habeas petitions within a year after conclusion of the appellate process, thus tolling the deadline for filing a federal habeas petition under section 2244(d)(2). That should continue to be our goal.

Our rules do not penalize prefiling delays in capital habeas proceedings. Because a state habeas petition is presumed timely if it is filed within six months after filing of the appellant's reply brief or three years after the appointment of habeas counsel, whichever is *later* (Cal. Supreme Ct., Policies Regarding Cases Arising from Judgments of Death, policy 3, std. 1-1.1), capital inmates have little incentive to demand an expeditious appointment of habeas counsel. Perhaps the time has come to change this aspect of our rules. However, we should resist the suggestion that this court is somehow obligated to help capital prisoners delay the federal limitations period because we have had difficulty appointing counsel for their *state* habeas petitions. Congress created clear consequences for delay when it enacted AEDPA's one-year statute of limitations for federal habeas petitions. Nevertheless,

without authorization by statute or rule of court, the majority now approves of an informally adopted procedure designed expressly to thwart this congressional aim. This court should not abandon its general rules and fashion a sham procedure solely to enable a small set of habeas petitioners to evade federal law.

Baxter, J., concurred.